UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORI ALTERIO,<br>    Plaintiff,<br><br>v.<br><br>ALMOST FAMILY,<br>    Defendant. | No. 3:18-cv-374 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

On January 30, 2018, Lori Alterio ("Plaintiff") filed a civil complaint in Connecticut Superior Court against Almost Family, Inc. ("Defendant" or "Almost Family), her former employer. Compl., ECF No. 1-1. Ms. Alterio alleges that she was terminated in violation of the public policy of the state of Connecticut and the covenant of good faith and fair dealing. *Id*.

On March 2, 2018, Almost Family removed the case to this Court on diversity grounds under 28 U.S.C. § 1441 and 1446. Notice of Removal from State Court, ECF No. 1, ¶¶ 6-14.

On March 9, 2018, Almost Family moved to dismiss the case. Def. Mot. to Dismiss or for a More Definite Statement ("Mot. to Dismiss"), ECF No. 10.

For the reasons set forth below, the Court now **GRANTS** Almost Family's motion to dismiss, ECF No. 10, but also grants Ms. Alterio leave to file an Amended Complaint by **April 5, 2019**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

    **A. Factual Background**

For more than 20 years at Almost Family, Inc., Ms. Alterio allegedly held "positions of increasing responsibility[.]" Compl. ¶ 6. In October of 2016, Ms. Alterio allegedly agreed to

serve as the Director of Professional Services for Almost Family's Trumbull, Connecticut Willcare Agency. ¶ 9.

Over the next year, Ms. Alterio allegedly discovered several documentation and healthcare compliance issues at various Almost Family sites in Connecticut. *Id*. ¶ 19. She allegedly conducted an audit and discovered deficiencies in employee and patient recordkeeping at Almost Family's Watermark Assisted Living Facility and Sunrise of Stamford facility. *Id*. ¶ 6. Ms. Alterio allegedly communicated her concerns about missing documents and non-compliance to Brent Piepenbring, Almost Family's Executive Director for Connecticut, and Sippy Olarsch, Almost Family's Northeast Regional Rehab Director. *Id*. ¶ 22.

In the summer of 2017, Ms. Alterio allegedly informed Almost Family's previous Executive Director, Nicole Lavin, and Northeast Regional Clinical President, Sheryl Rossingnol, that the company needed to hire a new Home Health Aide Supervisor to comply with Connecticut state requirements. *Id*. ¶ 25–27. Ms. Rossingnol allegedly told Ms. Alterio that a registered nurse from another branch had been designated as the new Home Health Supervisor for Connecticut. *Id*. ¶ 28. Ms. Alterio still felt that there were compliance issues since Almost Family's "Willcare Agency [allegedly] held its own provider number which separates it from the defendant's other offices." *Id*. ¶ 29. Ms. Rossignol allegedly told Ms. Alterio to address the issue with Mr. Piepenbring. *Id*. ¶ 30. Ms. Alterio allegedly raised her concerns in meetings with Mr. Piepenbring in July and September of 2017. *Id*. ¶ 32.

Ms. Alterio also allegedly expressed concerned about an account executive who "would overstep the legal boundaries of his position and participate [in] the clinical decision-making process, in violation of the regulations of the State of Connecticut." *Id*. ¶ 34. She allegedly raised these concerns with Mr. Piepenbring in October of 2017. *Id*. ¶ 37.

On November 3, 2017, Almost Family allegedly terminated Ms. Alterio from its employment. *Id.* ¶ 6. Ms. Alterio contends that she "was terminated by the defendant as a result of the legitimate, scrupulous and professional efforts [she took to] properly maintain health care records, properly appoint a Home Health Aide Supervisor, keep a separation between clinical . . . and non-clinical staff in communicating with a patient's physician when developing a patient's healthcare plan, [in honor of] the provisions of the Connecticut Patient Bill of Rights." *Id.* ¶ 48.

Ms. Alterio therefore alleges that Almost Family unlawfully discharged her in violation of the public policy of the state of Connecticut, *id.* ¶¶ 1–54, and breached the covenant of good faith and fair dealing, *id.* ¶¶ 55–63.

### B. Procedural Background

On January 30, 2018, Ms. Alterio filed her Complaint in Connecticut Superior Court, Judicial District of Fairfield. Compl.

On March 2, 2018, Almost Family removed the case on diversity grounds under 28 U.S.C. § 1441 and 1446, alleging that Almost Family is incorporated in Delaware with a principal place of business in Kentucky, and that the amount in controversy exceeds $75,000. Notice of Removal from State Court ¶¶ 6-14.

On March 9, 2018, Almost Family moved to dismiss the case. Mot. to Dismiss, ECF No. 10.

On April 30, 2018, Ms. Alterio opposed the motion to dismiss. Mem. in Opp. to Defs. Mot. to Dismiss ("Pl. Mem. in Opp."), ECF No. 20.

On May 7, 2018, the Court issued a scheduling order. Scheduling Order, ECF No. 22.

On May 21, 2018, Defendant replied. Reply in Further Supp. of Defs. Mot. to Dismiss or for a More Definite Statement ("Reply"), ECF No. 27.

On March 5, 2019, the Court held a hearing on the motion to dismiss. Minute Entry, ECF No. 36.

Discovery is set to close on June 7, 2019. Order, ECF No. 33.

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. FED. R. CIV. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of [his or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (*quoting Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to

dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002).

## III. DISCUSSION

### A. Violation of the Public Policy of the State of Connecticut

Ms. Alterio claims that Defendant violated "[t]he regulatory mosaic crafted by federal and state governments with their concern for patient safety and quality healthcare." Pl. Mem. in Opp. at 20; *see also* Compl. ¶¶ 46–47 ("In terminating the plaintiff's employment, the defendant violated the public policy of the United States of America, and the State of Connecticut as embodied in federal, and state laws and regulations . . . . to protect the rights of patients being treated through health care agencies[.]").

Defendant argues that Ms. Alterio has failed to allege a specific, sufficiently important public policy violation, and that her claim may be preempted by statutory remedies. Mem. of Law in Supp. of Def. Mot. to Dismiss, or For a More Definite Statement ("Def. Mem. of Law"), ECF No. 10-1, at 1.

The Court agrees.

"As a general matter, employment relationships in Connecticut are 'at-will' absent a contract to the contrary." *Van Kruiningen v. Plan B, LLC*, 485 F. Supp. 2d 92, 95 (D. Conn. 2007), *citing Thibodeau v. Design Grp. One Architects, LLC*, 260 Conn. 691, 697–98, 802 A.2d 731, 735 (2002). "Beginning in the late 1950s, however, courts began to carve out certain exceptions to the at-will employment doctrine, thereby giving rise to tort claims for wrongful discharge. Certain employer practices provoked public disfavor, and unlimited employer discretion to fire employees eventually yielded to a more limited rule." *Thibodeau*, 260 Conn. at

5

698, *citing Thibodeau v. Design Grp. One Architects, LLC*, 64 Conn. App. 573, 577, 781 A.2d 363, 365 (2001), *rev'd and remanded*, 260 Conn. 691, 802 A.2d 731 (2002).

Limitations to at-will employment in Connecticut arise from specific statutes and cases. In *Sheets*, the Connecticut Supreme Court held that Mr. Sheets might have been wrongfully terminated after notifying his employer that some of its food labels contained false or misleading information in violation of an important public policy (i.e., Connecticut General Statute § 19-222). *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 473, 480, 427 A.2d 385, 386 (1980). The *Sheets* court did not decide whether "violation of a state statute is invariably a prerequisite to the conclusion that a challenged discharge violates public policy." *Id.* at 480. Since *Sheets*, the public policy exception to at-will employment has remained "inherent[ly] vague[.]" *Thibodeau*, 260 Conn. at 699. Nevertheless, *Sheets* serves as a bellwether for Connecticut courts' willingness to "recognize the sufficiency of a claim under the public policy exception to the at-will employment doctrine." *Thibodeau*, 260 Conn. at 699.

Throughout the 1980s and 90s, the Connecticut Supreme Court sought to clarify the public policy exception. *Thibodeau*, 260 Conn. at 699 (*citing Faulkner v. United Techs. Corp., Sikorsky Aircraft Div.*, 240 Conn. 576, 581, 693 A.2d 293, 295 (1997) and collecting cases). On several occasions, the Connecticut Supreme Court directed lower courts to examine "whether the plaintiff has . . . alleged that [his or her] discharge violated any explicit statutory or constitutional provision . . . or whether [he or she] alleged that [his or her] dismissal contravened any judicially-conceived notion of public policy." *Id.*, citing *Faulkner*, 240 Conn. at 580–81. *See also Antinerella v. Rioux*, 229 Conn. 479, 483, 642 A.2d 699, 701 (1994), *overruled on other grounds by Miller v. Egan*, 265 Conn. 301, 828 A.2d 549 (2003); *Parsons v. United Techs. Corp., Sikorsky Aircraft Div.*, 243 Conn. 66, 85–87, 700 A.2d 655, 657 (1997).

While a number of these cases identified plausible public policy exceptions to at-will employment, others "underscored . . . the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one." *Thibodeau*, 260 Conn. at 701, *citing Burnham v. Karl & Gelb, P.C.*, 252 Conn. 153, 159, 745 A.2d 178, 181 (2000); *Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 804, 734 A.2d 112, 134 (1999). In *Thibodeau*, the Connecticut Supreme Court held that a plaintiff alleging wrongful termination on account of sex discrimination had failed to state a legally cognizable claim for relief under Connecticut's Fair Employment Practices Act ("FEPA") because FEPA governs only those employers with three or more employees, and plaintiff's employer employed two people. *Thibodeau*, 260 Conn. at 693, *citing* CONN. GEN. STAT. §§ 46a-51, *et seq*.

The *Thibodeau* court explained that the exemption of small employers from FEPA was itself an expression of public policy that the court could not ignore. *Thibodeau*, 260 Conn. at 708 ("Although one may agree or disagree that these reasons provide a convincing basis for exempting small employers from the act, we are not free to disregard the legislative policy determination upon which the exemption is founded . . . . Our failure to recognize the public policy reflected in the exemption of small employers would expose them to liability for employment discrimination claims notwithstanding a clearly expressed legislative preference to the contrary. To disregard that policy decision would violate a fundamental principle underlying our recognition of public policy exceptions to the at-will employment doctrine, namely, that we may not 'ignore [a] statement of public policy that is represented by a relevant statute.'") (internal quotations and citation omitted)).

Though factually and procedurally[1] distinct from the present case, *Thibodeau* is instructive to the Court because it requires judges to examine "expression[s] of public policy", *id*. at 717, when determining if a plaintiff has alleged a legally cognizable exception to Connecticut's at-will employment doctrine. Following *Thibodeau*, plaintiffs must articulate a logical reason for the claimed public policy exception. *Id*. ("In sum, we see no reason why the legislature would have excluded small employers from the act unless it had decided, as a matter of policy, that such employers should be shielded from liability for employment discrimination, including sex and pregnancy-related discrimination. Neither the plaintiff nor the dissent has articulated any logical reason why this legislative policy decision is not fully applicable to common-law claims based on the public policy exception to the at-will employment doctrine.").

Ms. Alterio has not articulated a logical reason to depart from Connecticut's at-will employment doctrine. Though she asserts that "[t]he regulatory mosaic crafted by federal and state governments" justifies an exception, Pl. Mem. in Opp. at 20; *see also* Compl. ¶¶ 46–47, she has identified just one specific federal statute as the source for her claim. That statute, the American Recovery and Reinvestment Act of 2009 is cited for the proposition that "health-care providers [must] make meaningful use of the government-mandated EHR [electronic health records] for all their patients by 2014, [with] penalties for non-compliance." Compl. ¶ 13.

It is not clear how the American Recovery and Reinvestment Act of 2009 implicates the public policy issues allegedly raised by Ms. Alterio. Ms. Alterio does not argue that this federal statute, or any related statute or regulation, provides specific protections for the issues raised by her. For example, she has not connected the American Recovery and Reinvestment Act of 2009's electronic records mandate to broader patients' rights policies. *See* Compl. ¶ 47 (asserting a host

---

[1] *Thibodeau* was dismissed by the trial court at the summary judgment stage. *See Thibodeau*, 260 Conn. at 694.

of patients' rights concerns). Nor has she identified other legislation or regulations that provide or substantiate her claim that these public policy issues are sufficiently serious as to warrant an exception to Connecticut's at-will employment doctrine. *See*, *e.g.*, *Frank v. CCARC, Inc.*, No. HHDCV166066639, 2016 WL 8135425, at *3, 5 (Conn. Super. Ct. Dec. 27, 2016) (discussing the existence of "a clear, well-defined and dominant state public policy in favor of the care and protection of persons with [intellectual disabilities] . . . and "sufficient facts to support a common-law wrongful termination claim . . . that the plaintiff was terminated for reporting abusive conduct to the defendant of a disabled individual in violation of the public policy expressed in [Connecticut General Statute] § 46a–11b"); *cf* Wright v. Cornell Scott Hill Health Ctr., Corp., No. CV126031077S, 2013 WL 1715658, at *1, 3 (Conn. Super. Ct. Apr. 1, 2013) (finding an "important public policy against fraudulent business practices" in Connecticut common law and permitting a wrongful termination claim to proceed where plaintiff "periodically complained" about business practices allegedly including: "filing false claims, submitting false reports to government agencies, submitting false claims for Medicaid and Medicare reimbursement and double billing Medicaid and Medicare for the same services.").

Absent such specificity, the Court cannot rule out the possibility that a statutory remedy exists, determine whether such a remedy would preclude Ms. Alterio from pursuing this case, or conclude that a public policy exception is warranted. *See Thibodeau*, 260 Conn. at 708 ("Our failure to recognize the public policy reflected in the exemption of small employers would expose them to liability for employment discrimination claims notwithstanding a clearly expressed legislative preference to the contrary. To disregard that policy decision would violate a fundamental principle underlying our recognition of public policy exceptions to the at-will

9

employment doctrine, namely, that we may not 'ignore [a] statement of public policy that is represented by a relevant statute.'").

In any event, even viewing the Complaint in the light most favorable to Ms. Alterio,[2] *York*, 286 F.3d at 125 ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), the Complaint lacks the "factual amplification . . . to render a claim plausible." *Arista Records LLC*, 604 F.3d at 120. For that reason, the Court must dismiss Ms. Alterio's unlawful discharge claim. Compl. ¶¶ 1–54.

### B. Breach of the Covenant of Good Faith and Fair Dealing

Almost Family argues that Ms. Alterio's breach of covenant claim must be dismissed because "Connecticut courts have held that an employer breaches the covenant only where the employee's termination violated public policy." Def. Mem. of Law at 12.

The Court agrees.

The Connecticut Supreme Court "requires an at-will employee to challenge his or her dismissal on the basis of a public policy violation whether the plaintiff frames the claim in tort or in contract. Therefore, if the plaintiff's tort [or contract] claim fails because there was no public policy violation, an alleged violation of the implied covenant of good faith and fair dealing similarly fails." *Thibodeau*, 260 Conn. at 697 fn 7.

Because Ms. Alterio has failed to state a plausible public policy violation, her implied covenant of good faith and fair dealing claim also must fail.

---

[2] If the Court accepts as true that Ms. Alterio alerted Almost Family to missing records at two of its Connecticut locations and Almost Family terminated Ms. Alterio's employment as a result, Compl. ¶¶ 19–22, 45 those bare allegations, without more, are insufficient to support a public policy exception to Connecticut's at-will employment doctrine.

### C. Leave to Amend

While the Court rules that Ms. Alterio has failed to state a claim upon which relief can be granted, the Court must consider whether leave to amend the Complaint should be provided.

Rule 15 establishes a permissive standard for the amendment of pleadings. FED. R. CIV. P. 15(a)(2). Courts will not deny leave absent a substantial reason to do so. *Friedl*, 210 F.3d at 87; *see also Foman*, 371 U.S. at 182. Courts, however, will deny leave on account of prejudice. *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 376 (D. Conn. 2012). An "[a]mendment may be prejudicial when, among other things, it would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute.'" *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725–26 (2d Cir. 2010) (internal quotation and citation omitted).

The parties report that they have not begun discovery. Minute Entry, ECF No. 36. Further, Almost Family has styled its motion to dismiss in the alternative, as a motion for a more definite statement. Mot. to Dismiss. Given the early stage of this litigation, the Court finds that Almost Family would not be unduly prejudiced by amendment of the Complaint.

Because it is not clear whether the deficiencies raised in this Complaint can be addressed, the Court will grant leave to file an Amended Complaint and will give Ms. Alterio until **April 5, 2019** in order to do so.

## IV. CONCLUSION

For the reasons set forth above, the Court now **GRANTS** Defendant's motion to dismiss, ECF No. 10.

Should Ms. Alterio choose to file an Amended Complaint to remedy the deficiencies addressed in this Ruling and Order, she must do so by **April 5, 2019**.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of March, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE