UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORI ALTERIO,<br>　　*Plaintiff*,<br><br>　　v.<br><br>ALMOST FAMILY, INC.,<br>　　*Defendant*. | No. 3:18-cv-374 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

After the dismissal of her original Complaint, Lori Alterio ("Plaintiff") has filed an Amended Complaint against her former employer, Almost Family, Inc. ("Defendant" or "Almost Family"), Am. Compl., ECF No. 38 (Mar. 25, 2019), and alleged that her termination violated her rights under the First Amendment as well as the implied covenant of good faith and fair dealing. *Id.* ¶¶ 125-249.

Almost Family has moved to dismiss this lawsuit again. Mot. to Dismiss, ECF No. 39 (Apr. 8, 2019).

For the reasons set forth below, the Defendant's motion to dismiss is **GRANTED with prejudice**.

I.　**FACTUAL AND PROCEDURAL BACKGROUND**

　　A.　**Factual Allegations**

For more than twenty years, Ms. Alterio allegedly worked for Almost Family, "a provider of home health nursing, rehabilitation and personal care services." Am. Compl. ¶¶ 11, 16. During her employment, Ms. Alterio held "positions of increasing responsibility[.]" *Id.* ¶ 12. In October of 2016, Ms. Alterio allegedly agreed to serve as the Director of Professional Services for Almost Family's Trumbull, Connecticut Willcare Agency. *Id.* ¶ 14. Almost Family allegedly

1

assured Ms. Alterio "that it would provide her with the necessary training and support to perform her duties[] and responsibilities." *Id.* ¶ 15. In this position, Ms. Alterio allegedly was responsible for Almost Family's compliance with federal and state laws and regulations. *Id.* ¶ 25.

"The year following [her] employment as the Director of Professional Services," Ms. Alterio and Kelly O'Brien, allegedly Medical Record Specialist for Almost Family, allegedly initiated an audit of personnel records. *Id.* ¶ 27. Ms. Alterio allegedly discovered that staff at Almost Family's Watermark Assisted Living Facility and Sunrise of Stamford facility were not complying with federal and state requirements "regarding proper documentation being placed in patients[]' and employees' files" or regarding transitioning those files to electronic format. *Id.* ¶ 28. Ms. Alterio allegedly attempted to obtain the documents necessary to come into compliance with federal and state law from Lindsey Deleo, Almost Family's Rehab Manager for Connecticut. *Id.* ¶ 31. Ms. Alterio and Ms. O'Brien allegedly had to return the documents to Ms. Deleo to be re-submitted a second time because they were not completed correctly. *Id.* ¶ 32.

Ms. Alterio allegedly discussed her concerns about Ms. Deleo's alleged non-compliance to Brent Piepenbring, Almost Family's Executive Director for Connecticut, and Sippy Olarsch, Almost Family's Northeast Regional Rehab Director. *Id.* ¶ 33.

In June 2017, a Home Health Aide Supervisor for Almost Family allegedly resigned, leaving vacant a position that Ms. Alterio allegedly believed had to be filled in order for Almost Family to comply with state law. *Id.* ¶¶ 35-37. Ms. Alterio allegedly informed Almost Family's previous Executive Director, Nicole Lavin, and later Northeast Regional Clinical President, Sheryl Rossingnol, that the company needed to appoint a new Home Health Aide Supervisor to comply with Connecticut state requirements. *Id.* ¶¶ 38-39. Ms. Rossingnol allegedly told Ms. Alterio that a registered nurse from another branch had been designated as the new Home Health

Supervisor for Connecticut. *Id*. ¶ 40. Ms. Alterio allegedly considered these actions insufficient to bring Almost Family into compliance with state law because Almost Family's "Trumbull, CT Willcare Agency [allegedly] held its own provider number which separated it from the [D]efendant's other offices." *Id*. ¶ 41. Ms. Rossignol allegedly told Ms. Alterio to address the issue with Mr. Piepenbring. *Id*. ¶ 42.

Ms. Alterio allegedly sent an e-mail to Mr. Piepenbring about her concerns, but he allegedly never responded. *Id.* ¶ 43. She allegedly expressed her concerns again with Mr. Piepenbring in July and September of 2017, but allegedly no one ever addressed this issue while she worked with Almost Family. *Id*. ¶¶ 44-45.

In October of 2017, Ms. Alterio also allegedly raised concerns about Raymond Baldwin, an Almost Family account executive, to Mr. Piepenbring. *Id.* ¶ 49. Mr. Baldwin allegedly "would overstep the legal boundaries of his position and participate in the clinical decision-making process, in violation of the regulations of the State of Connecticut." *Id*. ¶ 46. Mr. Baldwin also allegedly "would directly consult with medical professionals concerning their patients' plan of care," "instruct . . . clinical staff regarding the performance of their professional duties," and otherwise engage with patients, ignoring federal and state regulations, in order to generate business for Almost Family. *Id.* ¶ 47-61.

Ms. Alterio allegedly shared her "various complaints" about Mr. Baldwin's alleged misconduct with Mr. Piepenbring, *id.* ¶ 49, including an incident where Mr. Baldwin had allegedly deceived a patient and the patient's family about what type of therapy would be covered under Medicare "solely to obtain their agreement to have [Almost Family] provide the patient with home care services," *id*. ¶¶ 59-61.

3

On November 3, 2017, Almost Family allegedly ended Ms. Alterio's employment. *Id.* ¶ 11. In her view, Ms. Alterio lost her job

> on account [of her] legitimate and honest efforts to assure compliance by the [D]efendant[] and its personnel with federal[] and state law[] as well as federal[] and state administrative regulations mandating that the [D]efendant maintain proper medical records, appoint proper supervisory personnel, keep a separation between clinical[] and non-clinical staff in communicating with a patient's physician when developing a patient's healthcare plan, and adhere to the provisions of the Connecticut Patient Bill of Rights.

*Id.* ¶ 142.

### B. Procedural History

On January 30, 2018, Ms. Alterio filed a complaint in Connecticut Superior Court, Judicial District of Fairfield, against Almost Family, alleging a termination in violation of the public policy of the state of Connecticut and the covenant of good faith and fair dealing. Compl., ECF No. 1-1 (Jan. 30, 2018).

On March 2, 2018, Almost Family removed the case on diversity grounds under 28 U.S.C. §§ 1441 and 1446, alleging that Almost Family is incorporated in Delaware with a principal place of business in Kentucky, and that the amount in controversy exceeds $75,000. Notice of Removal from State Court ¶¶ 6-14, ECF No. 1 (Mar. 2, 2018).

On March 9, 2018, Almost Family moved to dismiss the case. Mot. to Dismiss, ECF No. 10 (Mar. 9, 2018).

On March 6, 2019, the Court granted Almost Family's motion to dismiss without prejudice to Ms. Alterio filing an Amended Complaint. Order Granting Mot. to Dismiss and Leave to File Am. Compl., ECF No. 37 (Mar. 6, 2019) ("Order on First Mot. to Dismiss").

On March 25, 2019, Ms. Alterio filed an Amended Complaint, claiming that Almost Family unlawfully discharged her in violation of her rights under the First Amendment and in breach of an implied covenant of good faith and fair dealing. Am. Compl. ¶¶ 125-248.

On April 8, 2019, Almost Family moved to dismiss Ms. Alterio's amended complaint. Mot. to Dismiss.

On April 22, 2019, Ms. Alterio filed a memorandum in opposition to the motion to dismiss. Pl.'s Mem. Opp., ECF No. 40 (Apr. 22, 2019).

On May 6, 2019, Almost Family filed a reply to Ms. Alterio's opposition. Def.'s Reply, ECF No. 41 (May 6, 2019).

On November 21, 2019, the Court held a hearing on the motion to dismiss. Minute Entry, ECF No. 49 (Nov. 21, 2019).

Following the hearing, the Court granted the Defendant until November 27, 2019, "to respond to the case raised by Plaintiff's counsel during oral argument: *Dighello v. Thurston Foods, Inc.*, 307 F. Supp. 3d 5 (D. Conn. 2018)."

On November 26, 2019, Almost Family submitted a supplemental memorandum responding to the case raised by Plaintiff's counsel. Suppl. Mem. in Supp. of Mot. to Dismiss, ECF No. 50 (Nov. 26, 2019) ("Def.'s Suppl. Mem.").

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.")).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs.,*

*Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III. DISCUSSION

### A. The Public Policy Violation Claim[1]

#### 1. Violation of a Public Policy

"As a general matter, employment relationships in Connecticut are 'at-will' absent a contract to the contrary." *Van Kruiningen v. Plan B, LLC*, 485 F. Supp. 2d 92, 95 (D. Conn. 2007) (citing *Thibodeau v. Design Grp. One Architects, LLC*, 260 Conn. 691, 697–98 (2002)). Connecticut only recognizes a common law exception to at-will employment "if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." *Lopez v. Burris Logistics Co.*, 952 F. Supp. 2d 396, 404 (D. Conn. 2013) (quoting *Burnham v. Karl and Gelb, P.C.*, 252 Conn. 153, 159–60 (2000)).

> In general, under Connecticut law, in order to state a claim for common law wrongful discharge in violation of public policy, a plaintiff must: (1) plead that the alleged conduct by the employer contravenes public policy and (2) demonstrate that the plaintiff is otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated.

---

[1] Ms. Alterio describes her first cause of action as "Violation of the Plaintiff's First Amendment Rights Guaranteeing Him Free Speech," Am. Compl. at 12, but the content of this cause of action does not discuss speech or the First Amendment at all. Instead, as Almost Family points out, Ms. Alterio appears to be largely re-stating a claim which the Court dismissed from her original complaint—that Almost Family discharged her in violation of public policy. Order on First Mot. to Dismiss at 8 (dismissing Ms. Alterio's public policy claim because she "ha[d] not articulated a logical reason to depart from Connecticut's at-will employment doctrine"). Indeed, Ms. Alterio herself argues in her response to the motion to dismiss that she is not making a First Amendment claim at all, but rather that she "mistakenly labeled her first cause of action in her amended complaint." Pl.'s Mem. at 1. Ms. Alterio claims this was "an error in copying and pasting form another, unrelated complaint, not for its substance but for its format styling." *Id.* She urges the Court to read her Amended Complaint as "plead[ing], with particularity, the essential elements of a cause of action based on the legal theory of wrongful termination in violation of public policy." *Id.* Almost Family argues that Ms. Alterio's first cause of action should be dismissed whether it is read as a First Amendment claim or a public policy claim. Def.'s Mem. at 6-11. As discussed *infra*, the Court agrees.

*Burnham*, 252 Conn. at 159–60 (internal citation omitted).

The public policy exception to at-will employment is narrow. When a court evaluates claims of wrongful discharge in violation of public policy, it "look[s] to see whether the plaintiff has alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether he alleged that his dismissal contravened any judicially conceived notion of public policy." *Thibodeau*, 260 Conn. at 699.

Courts have allowed plaintiffs to state claims of common law wrongful discharge for violation of public policy where plaintiffs point to explicit statutory language giving rise to the public policy at issue. *See, e.g.*, *Frank v. CCARC, Inc.*, No. HHDCV166066639, 2016 WL 8135425, at *3 (Conn. Super. Ct. Dec. 27, 2016) (permitting a plaintiff to state a wrongful discharge claim in violation of public policy where state statutes had clearly stated a policy in favor of employees like the plaintiff reporting abusive conduct against a disabled individual and the state supreme court had recognized "a clear, well-defined and dominant state public policy in favor of the care and protection of persons with [intellectual disability]" (quoting *State v. New England Health Care Emps. Union, Dist. 1199, AFL-CIO*, 271 Conn. 127, 137 (2004) (basing its conclusion on an analysis of the legislative and regulatory scheme))); *Faulkner v. United Techs. Corp., Sikorsky Aircraft Div.*, 240 Conn. 576, 586, 693 A.2d 293, 297 (1997) (allowing a plaintiff to make a claim of wrongful discharge in violation of public policy that was expressed in a federal fraud statute); *Parsons v. United Techs. Corp.*, *Sikorsky Aircraft Div.*, 243 Conn. 66, 77-80 (1997) (permitting a claim of a public policy violation where the plaintiff pointed to several state statutes explicitly requiring employers to maintain a reasonably safe workplace for its employees); *Antinerella v. Rioux*, 229 Conn. 479, 493 (1994) (holding that a plaintiff stated a claim of wrongful discharge because his claims "genuinely involve[d] the mandates of public

policy derived directly from state statutes"), *overruled on other grounds by Miller v. Egan*, 265 Conn. 301 (2003).

By contrast, courts have rejected claims of wrongful discharge where there was "no statutorily based expression of public policy sufficient to warrant an exception to the at-will employment doctrine." *Thibodeau*, 260 Conn. at 701; *see also Geysen v. Securitas Sec. Servs. USA, Inc.*, 322 Conn. 385, 408 (2016) ("We repeatedly have underscored our adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one. . . . Consequently, we have rejected claims of wrongful discharge that have not been predicated upon an employer's violation of an important and clearly articulated public policy." (quoting *Thibodeau*, 260 Conn. at 701)).

Ms. Alterio argues that her termination was "a result of the legitimate, scrupulous and professional efforts of the [P]laintiff in attempting to properly maintain health care records, properly appoint a Home Health Aide Supervisor, maintain a separation between clinical, and non-clinical staff in communicating with a patient's physician when developing a patient's healthcare plan, and honor the provisions of the Connecticut Patient Bill of Rights." Am. Compl. ¶ 145. In her view, her "termination violated the public policy of the United States, and State of Connecticut." *id*. ¶ 147.

Almost Family argues that there is no basis to depart from Connecticut's at-will employment doctrine. In its view, Ms. Alterio has failed to allege that her termination violated a sufficiently important public policy and additionally, because Ms. Alterio has alternative (and unexhausted) remedies for challenging her termination. Def.'s Reply at 4-6.

The Court agrees.

The Court dismissed Ms. Alterio's original public policy claim because Ms. Alterio had identified only one specific statute—the federal American Recovery and Reinvestment Act of 2009—and she failed to state how that statute implicated public policy relating to patients' rights which she claimed justified an exception to at-will employment. Order on First Mot. to Dismiss at 8. The Court stated that, "[a]bsent such specificity," it could not "rule out the possibility that a statutory remedy exists, determine whether such a remedy would preclude Ms. Alterio from pursuing this case, or conclude that a public policy exception is warranted." *Id.* at 10.

In her Amended Complaint, Ms. Alterio repeats her reasons for relying on the American Recovery and Reinvestment Act of 2009. As she did in her original complaint, she states that:

> In enacting [the American Recovery and Reinvestment Act of 2009], the United States Congress determined that implementing a nationwide system of electronic health records would "reduce[] health care costs resulting from inefficiency, medical errors, inappropriate care, duplicative care, and incomplete information" and "provide[] appropriate information to help guide medical decisions at the time and place of care."

Am. Compl. ¶ 21. She now argues in her Amended Complaint that "[i]mprovement of public health and safety is the primary reason behind the Congressional mandate requiring medical providers to implement electronic health record systems." *Id.* ¶ 23. To support this argument, she cites to a website for the Agency for Healthcare Research and Quality, a division of the U.S. Department of Health and Human Services (DHHS), *id.* ¶ 22, a website for the Office of the National Coordinator for Health Information Technology, *id.* ¶ 24, and an article published in the New England Journal of Medicine in 2012, *id.* ¶ 23.

Ms. Alterio also adds citations to multiple federal and state regulations, agency guidance, and policy statements posted online by federal and state agencies charged with regulating health care to support her claim that her termination violated public policy. Am. Compl. ¶¶ 22-24, 29-

30, 37, 52-60, 127-141. She argues that these agency statements "form a comprehensive system of regulations which embodies the public policy of the United States and State of Connecticut to improve healthcare and to protect the safety of patients." Pl.'s Mem. at 14. She argues further that "the policy of patient care and safety is firmly embodied in explicit state and federal regulations" cited in her amended complaint. *Id.* at 15.

Ms. Alterio also cites to the mission statement of the Connecticut Department of Public Health

> to protect and improve the health and safety of the people of Connecticut by: Assuring the conditions in which people can be healthy; preventing disease, injury, and disability; and promoting the equal enjoyment of the highest attainable standard of health, which is a human right and a priority of the state.

Am. Compl. ¶ 132 (citing Conn. Dep't of Pub. Health, Mission Statement, https://portal.ct.gov/DPH/communications/About-Us/About-Us (last visited Nov. 19, 2019)). She also alleges that the mission statement of the U.S. Department of Health and Human Services (DHHS) is "to make healthcare affordable, high quality, and accessible for the people it serves," *id.* ¶ 141, based on a quote from DHHS's most recent strategic plan, U.S. Dep't of Health & Hum. Servs., Strategic Plan FY 2018-2022, Strategic Goal 1: Reform, Strengthen, and Modernize the Nation's Healthcare System, https://www.hhs.gov/about/strategic-plan/strategic-goal-1/index.html (last updated Feb. 28, 2018) ("To improve the health of our Nation, the Department is working with its public and private partners to make healthcare affordable, high quality, and accessible for the people it serves."). Ms. Alterio alleges further that DHHS "explains that '[e]lectronic health records (EHRs) are essential to improving patient safety,'" though she does not cite any DHHS source for that statement. *Id.* ¶ 134.

Ms. Alterio, however, does not point to any statutory expression of public policy, aside from the American Recovery and Reinvestment Act of 2009, to justify a departure from Connecticut's at-will employment doctrine. Am. Compl. ¶ 18-21. Her references to medical journal articles, *id.* ¶ 23, 140, federal agency guidance, *id.* ¶ 30, statements on federal agency websites, *id.* ¶ 22, 24, 141, and regulations promulgated by the Connecticut State Department of Public Health, *id.* ¶ 29, 37, 52, 59-60, 129-130, do not establish an important legislatively or judicially expressed public policy. *See Thibodeau*, 260 Conn. at 699 ("In evaluating claims [of wrongful discharge in violation of public policy], we look to see whether the plaintiff has alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether he alleged that his dismissal contravened any judicially conceived notion of public policy." (internal citations and alterations omitted)).

In Ms. Alterio's specific allegations, none of the cited sources of regulation or policy constitute an expression of legislative or judicial intent, which could warrant a public policy exception to at-will employment as to any of her allegations. Essentially, Ms. Alterio claims to have been fired because she tried to alert Almost Family to her concerns about three issues: alleged recordkeeping deficiencies, including with electronic record requirements; personnel requirements; and regulations regarding communications with patients.

First, Ms. Alterio alleges having reported recordkeeping deficiencies at two facilities to Mr. Piepenbring, including failure to transition patients' and employees' files to electronic format. Am. Compl. ¶ 28-34. These recordkeeping deficiencies allegedly violated a Connecticut regulation setting out personnel policy requirements for Connecticut agencies, Conn. Agencies Regs. § 19-13-D71, and federal agency guidance setting out standards for personnel records as a condition for federal Medicare recipients, Ctrs. for Medicaid and Medicare Servs., State

Operations Manual App'x B, Guidance to Surveyors: Home Health Agencies, § 484.14(e) (rev. Aug. 12, 2015), ("CMS Home Health Agency Guidance"), available at https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/GuidanceforLawsAndRegulations/HHAs.

But under Connecticut law, a plaintiff must point to an "explicit statutory or constitutional provision" or a "judicially conceived notion of public policy" in order to establish a public policy important enough to warrant an exception to at-will employment. *Thibodeau*, 260 Conn. at 699. Statements issued by a federal agency therefore are not sufficient to establish a public policy exception. Even if these statements were drawn from a statutory, constitutional, or judicial source, it is not clear that standards regulating personnel express a purported public policy of protecting patient care and safety. *See Geysen*, 322 Conn. at 408–09 ("In declining to recognize an important public policy . . . we are mindful that we should not ignore the statement of public policy that is represented by a relevant statute. . . . Nor should we impute a statement of public policy beyond that which is represented. To do so would subject the employer who maintains compliance with express statutory obligations to unwarranted litigation for failure to comply with a heretofore unrecognized public policy mandate." (quoting *Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 804 (1999) (internal alterations omitted)).

Second, Ms. Alterio allegedly told supervisors that Almost Family needed to appoint a new Home Health Supervisor in order to comply with Connecticut Agency Regulation § 19-13-D68(e)(1). This regulation allegedly requires home health care agencies to "employ one full-time supervisor of clinical services for each fifteen (15), or less, full-time or full-time equivalent professional direct service staff," who would be responsible for "maintaining the quality of clinical services." Am. Compl. ¶ 37. But as with federal agency statements, state agency

13

regulations are not a legislative expression of public policy. *See Thibodeau*, 260 Conn. at 699 (noting that plaintiffs must point to "explicit statutory or constitutional provision[s]" or "judicially conceived notion[s] of public policy."). Even if the statement were derived from a statutory, constitutional, or judicial source, Ms. Alterio fails to show how this state personnel regulation or the specific personnel issue she has identified relate to an overarching important public policy of protecting patient care and safety. *See Geysen*, 322 Conn. at 408–09 (declining "impute a statement of public policy beyond that which is represented").

Third, Ms. Alterio allegedly reported that another employee—Mr. Baldwin—had violated several state regulations, a federal regulation, and federal agency guidance, all regulating clinical communications regarding patient health care. *Id.* ¶ 51-60 (citing 42 C.F.R. § 484.60(b)(4) (regulating how a physician's verbal orders are to be authenticated and documented in a patient's clinical record); CMS Home Health Agency Guidance § 484.18(c) ("Verbal orders are only accepted by personnel authorized to do so by applicable State and Federal laws and regulations, as well as by the HHA's internal policies."); Conn. Agency Regs. § 19-13-D74 (providing that medications shall only be administered as ordered by a patient's physician or dentist); Conn. Agency Regs. § 19-13-D78 (setting forth a Patient's Bill of Rights, including (a) that patients have a right to a "description of available services, unit charges and billing mechanisms")). Once again, Ms. Alterio cited only administrative regulations and guidance, and she failed to point to any expressions of legislative intent as to public policy captured in a statutory or constitutional provision. *See Thibodeau*, 260 Conn. at 699 (noting that plaintiffs must point to "explicit statutory or constitutional provision[s]" or "judicially conceived notion[s] of public policy").

Ultimately, all of the sources Ms. Alterio now cites in her Amended Complaint as giving rise to a public policy justifying an exception to at-will employment in Connecticut are

14

statements from federal and state agencies. Ms. Alterio fails to adequately link the alleged reasons for her termination, or the regulations that Almost Family allegedly violated, to a purported public policy of protection patient care and safety, the alleged basis for her wrongful discharge claim. *See Geysen*, 322 Conn. at 408–09 (declining "impute a statement of public policy beyond that which is represented"); *Twombley*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted); *see also Arista Records LLC*, 604 F.3d at 120 (requiring "factual amplification . . . to render a claim plausible") (internal citation omitted).

Because Ms. Alterio's Amended Complaint fails to provide a viable claim, just as her original Complaint, the Court need not reach the issue of whether Ms. Alterio failed to exhaust an alternate remedy.

In any event, as to a remedy under Section 31-51q, that statute prohibits employers from "disciplin[ing] or discharg[ing]" an employee based on the employee's exercise of "rights guaranteed by the [F]irst [A]mendment to the United States Constitution" or corresponding provisions of the Connecticut state constitution, "provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer." Conn. Gen. Stat. § 31-51q.

The Supreme Court of Connecticut has held that Section 31-51q protects an employee's internal whistleblower speech when it is "on a matter of public concern and implicates an employer's 'official dishonesty . . . other serious wrongdoing, or threats to health and safety.'" *Trusz v. UBS Realty Inv'rs, LLC*, 319 Conn. 175, 212-215 (2015) (quoting *Garcetti v. Ceballos*,

15

547 U.S. 410, 435 (2006) (Souter, J., dissenting)). Section 31-51q extends the same protection to speech by a private employee as to speech by a public employee. *Id.* at 179.

Ms. Alterio argues, citing *Dighello v. Thurston Foods, Inc.*, that Section 31-51q did not preclude her claim of termination in violation of public policy. 307 F. Supp. 3d 5 (D. Conn. 2018) (finding that a common law wrongful discharge claim could go forward despite the availability of a claim under Section 31-51q based on the same underlying facts).

Almost Family argues that *Dighello* is irrelevant to the extent that Ms. Alterio claims her discharge was in violation of a public policy of patient care and safety, and that Ms. Alterio's wrongful discharge claim is precluded under *Dighello* to the extent that her claim might be based on the public policy of free employee speech. Def.'s Suppl. Mem. at 2-4. Almost Family argues that *Dighello* held that a common law wrongful discharge claim was not precluded by a Section 31-51q claim "only because the public policy considerations of each were distinct, with the common law claim relating to 'a violation of public policy regarding prevention of accidents of safety,' and the § 31-51q claim based on preservation of constitutional rights to free speech." *Id.* at 3 (quoting *Dighello*, 307 F. Supp. at 29-30)). Because Ms. Alterio has failed to establish that her termination violated a public policy of patient care and safety, Almost Family argues that *Dighello* simply does not apply. *Id.* at 2-5. Additionally, to the extent that Ms. Alterio "appears to be attempting to assert a claim based on the public policy in favor of free speech, which is protected by Connecticut General Statutes § 31-51q," her wrongful termination claim is precluded. *Id.* at 5-6.

The Court agrees.

In *Dighello v. Thurston Foods, Inc.*, a court in this District observed that "Connecticut's Superior Courts have consistently held that a plaintiff may recover under a theory of wrongful

discharge, notwithstanding a contemporaneous claim under Conn. Gen. Stat. § 31–51q, where the basis of the wrongful discharge claim is a public policy for which the plaintiff is without remedy." 307 F. Supp. 3d 5, 28 (D. Conn. 2018). "[W]hen the wrongful discharge count is dissimilar from that of an employee's constitutionally protected right of free speech, the plaintiff should be free to explore these two theories of his claim." *Id.* at 29 (quoting *Mirto v. Laidlaw Transit, Inc.*, No. 334231, 1993 WL 137627, at *3 (Conn. Super. Ct. Apr. 20, 1993) (finding that the plaintiff's common-law wrongful discharge claim, based on a statutory provision of safe and adequate transportation for school children was not precluded by the plaintiff's § 31–51q claim, which was based on protecting free speech)) (internal quotation marks omitted).

Because Ms. Alterio has failed to identify a legislatively or judicially expressed public policy relating to patient care and safety warranting an exception to the at-will employment doctrine, however, *Dighello* does not provide a basis for her claims avoiding dismissal. Moreover, to the extent that Ms. Alterio's wrongful discharge claim is based on the violation of the public policy of freedom of speech, her common law wrongful discharge claim is precluded. *Dighello*, 307 F. Supp. 3d at 27 ("[I]f [a p]laintiff's termination solely violated the public policy embodied in § 31–51q (providing her with a statutory remedy), her common law discharge claim . . . is precluded." (citing *Burnham*, 252 Conn. at 158–59)).

In any event, Ms. Alterio has repeatedly urged the Court not to view her claim as a freedom of speech claim, Pl.'s Mem. at 1, or a whistleblower claim, *id.* at 16 ("the [P]laintiff never alleged that she was a whistleblower"). As a result, because Ms. Alterio has failed to establish that she was terminated in violation of an important public policy, *Dighello* is not relevant here and this Court need not address whether she may have any other statutory remedy which could preclude a common law discharge claim.

Accordingly, Ms. Alterio's claim of wrongful discharge in violation of public policy will be dismissed.

## 2. First Amendment Claim

Ms. Alterio states in her objection to the motion to dismiss that, due to "an error in copying and pasting," she "mistakenly labeled her first cause of action in her amended complaint as a 'Violation of the Plaintiff's First Amendment Rights Guaranteeing Him Free Speech).'" Pl.'s Mem. at 1. As a result, she urges the Court not to construe that count as a First Amendment claim but rather as a wrongful discharge claim. *Id.* The Court has done so above.

In any event, Ms. Alterio could not state a claim under the First Amendment against Almost Family because Almost Family is a private employer, not a government employer, Am. Compl. ¶¶ 7-9 ("[Almost Family] is a foreign corporation, organized, and existing under the laws of the State of Delaware"), and is therefore not subject to suit under the First Amendment of the U.S. Constitution, *see Garcetti*, 547 U.S. 410 (setting forth the contours of the First Amendment's protection of the free speech of government employees).

To the extent that Ms. Alterio's claim could be construed as a claim of retaliation for speech protected by the First Amendment, *see York*, 286 F.3d at 125 ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), her claim therefore must be dismissed.

## B. The Implied Covenant of Good Faith and Fair Dealing Claim

Under Connecticut law, "if the plaintiff's tort [or contract] claim fails because there was no public policy violation, an alleged violation of the implied covenant of good faith and fair dealing similarly fails." *Thibodeau*, 260 Conn. at 697 n.7. Indeed, the Court dismissed an implied

covenant of good faith and fair dealing claim from Ms. Alterio's original Complaint because she failed to state a plausible public policy violation. Order on First Mot. to Dismiss at 10.

Almost Family argues that Ms. Alterio's breach of covenant claim must be dismissed again because (1) "Connecticut Courts have held that an employer breaches the covenant only where the employee's termination violated public policy," Def.'s Mem. at 12 (citing *Magnan v. Anaconda Indus. Inc.*, 193 Conn. 558, 572 (1984) ("We see no reason . . . to enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for the discharge involves impropriety . . . derived from some important violation of public policy")); and (2) "even where the plaintiff alleges that . . . her termination violated public policy, the plaintiff may only sue for breach of the covenant of good faith and fair dealing where he or she would otherwise be without remedy," Def.'s Mem. at 12 (citing *Burnham*, 252 Conn. at 159-160 ("The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated")).

The Court agrees.

Ms. Alterio merely repeats her earlier claim that Almost Family violated an implied covenant of good faith and fair dealing. *Compare* Am. Compl. ¶ 241-248 *with* Compl. ¶ 55-63. Because, as discussed above, the Court again dismisses her public policy violation claim, the Court must again dismiss her implied covenant of good faith and fair dealing claim. *See Thibodeau*, 260 Conn. at 697 n.7.

Accordingly, the Court will dismiss Ms. Alterio's breach of the implied covenant of good faith and fair dealing claim.

19

### C. Further Leave to Amend

In its Order dismissing Ms. Alterio's original Complaint, the Court noted that "it is not clear whether the deficiencies raised in th[e] Complaint can be addressed" and granted Ms. Alterio leave to file an Amended Complaint "to remedy the deficiencies addressed in [the Court's] Ruling and Order. Order on First Mot. to Dismiss at 11. Her Amended Complaint has not remedied those deficiencies.

Justice does not require granting Ms. Alterio a third opportunity to plead the same case. Dismissal of Ms. Alterio's claims with prejudice thus is appropriate. *See Brown v. Coach Stores, Inc.,* 163 F.3d 706, 712 n.4 (2d Cir. 1998) (denying leave to re-plead because "the district court already gave [plaintiff] an opportunity to file an amended complaint designed to cure the very defect that remains."); *UCF I Tr. 1 v. Berkowitz, Trager & Trager, LLC*, No. 3:17-cv-1325 (VAB), 2019 WL 1430105, at *8 (D. Conn. Mar. 29, 2019) (dismissing an amended complaint with prejudice because the plaintiffs had an an opportunity to remedy factual deficiencies in their complaint and failed to do so).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED with prejudice**. The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 20th of December, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE